**UNITED STATES DISTRICT COURT FOR**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **J&S KID'S WEAR, INC. d/b/a DENNY'S**<br><br>Plaintiff,<br><br>vs.<br><br>**THE OHIO CASUALTY INSURANCE COMPANY**<br><br>Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, J&S Kid's Wear, Inc. d/b/a Denny's (hereinafter "Denny's" or "Plaintiff") brings this Complaint against Defendant, The Ohio Casualty Insurance Company (hereinafter "Ohio" or "Defendant"), and alleges as follows:

## I.  NATURE OF THE CASE

1. This is a civil action for a declaratory judgment and breach of contract claim arising from Plaintiff's contract of insurance with the Defendant.

2. In light of the Coronavirus global pandemic and state and local orders requiring all non-life-sustaining businesses in the State to cease operations and close all physical locations, Plaintiff shut its doors on March 16, 2020, at the close of business.

3. Plaintiff's insurance policy provides coverage for all non-excluded business losses, including Business Income that would have otherwise been earned, and thus provides coverage here.

4. As a result, Plaintiff is entitled to declaratory relief that it is covered for all business losses that have been incurred and, subsequently, relief for its breach of contract claim in an amount estimated to be greater than $150,000.00.

## II.     JURISDICTION

5.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and the Defendant. Plaintiff is a resident of the State of New York and Defendant is a corporate citizen of the State of Ohio.  Further, the matter in controversy exceeds in the aggregate the sum of $75,000, exclusive of interest and costs. *Id.* at § 1332(a).

6.     The Court has personal jurisdiction over Defendant because at all relevant times it has engaged in substantial business activities in the State of New York.  At all relevant times Defendant transacted, solicited, and conducted business in New York through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in New York.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Defendant is a corporation that has substantial, systematic, and continuous contacts in the State of New York, and as a result it is subject to personal jurisdiction in this District.

8.     The acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

## III.     PARTIES

9.     At all relevant times, Plaintiff is a corporation authorized to do business and doing business in the State of New York, County of Nassau.  Denny's owns, controls and operates its business with a primary location at 343 South Oyster Bay Road, Plainview, New York 11803.

10. At all relevant times, Ohio is a corporation incorporated under the laws of Ohio with a principal place of business located at 9450 Seward Road, Fairfield, Ohio 45014 and doing business in the County of Nassau, State of New York subscribing to Policy Number BZ0 (20) 58 15 56 87 issued to the Plaintiff for the period of September 3, 2019 to September 3, 2020 (hereinafter "Policy"). (*See* Policy, attached hereto as Exhibit "A"). Defendant is transacting the business of insurance in the State of New York and within the County of Nassau and the basis of this suit arises out of such conduct.

### IV. FACTUAL BACKGROUND

**A. Insurance Coverage**

11. On or about September 3, 2019, Defendant entered into a contract of insurance with the Plaintiff, whereby Plaintiff agreed to make payments to Defendant in exchange for Defendant's promise to indemnify the Plaintiff for losses including, but not limited to, business income losses at its primary location at the time in Nassau County at 761 Merrick Avenue, Westbury, New York 11590 as well as several other locations detailed below. Plaintiff specializes in the retail sale of clothing, accessories, home goods, and more for children of all ages at its stores located throughout the State of New York.

12. Plaintiff is covered under a policy issued by the Defendant with policy number believed to be BZ0 (20) 58 15 56 87 (hereinafter "Policy"). (*See* Exhibit A).

13. The Policy is currently in full effect, providing, among other things property, business personal property, business income and extra expense, contamination coverage, and additional coverages between the period of September 3, 2019 to September 3, 2020.

14. Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority.

15. Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the business is specifically prohibited by order of civil authority. This additional coverage is identified as coverage under "Civil Authority."

16. The Policy is an all-risk policy, insofar as it provides that covered perils under the policy means physical loss or physical damage unless the loss is specifically excluded or limited in the Policy.

17. An all-risk policy such as that purchased by Plaintiff is one that protects against catastrophic events, such as the one occurring now, globally, involving the Covid-19 Pandemic that has resulted in the widespread, omnipresent and persistent presence of Covid-19 in and around Plaintiff's Insured Properties.

18. Plaintiff's policy applies to the above reference address as well as several of its other business locations, including the following (*See* Exhibit A at 12-19):

    a.    1317 Broadway, Hewlett, New York 11557

    b.    1435 Northern Boulevard, Manhasset, New York 11030

    c.    343 South Oyster Bay Road, Plainview, New York 11803

    d.    2784 Merrick Road, Bellmore, New York 11710

    e.    1936 Jericho Turnpike, East Northport, New York 11731

    f.    969 Central Park Avenue, Scarsdale, New York 10583

19. Plaintiff's all-risk policy includes coverage for business interruption, which is standard in most all-risk commercial property insurance policies, along with coverage for extended expenses.

20. Plaintiff purchased the aforementioned Policy expecting to be insured against losses, including, but not limited to, business income losses at the medical practice.

21. Plaintiff purchased, among other coverages, business interruption coverage for closure by Order of Civil Authority.

22. Based upon information and belief, the Policy provided by Defendant included language that is essentially standardized language adopted from and/or developed by the ISO ("Insurance Service Office"). The ISO, founded in 1971, provides a broad range of services to the property and casualty insurance industry. In addition to form policies, ISO collects and manages databases containing large amounts of statistical, actuarial, underwriting, and claims information, fraud-identification tools, and other technical services. ISO describes itself as follows: "ISO provides advisory services and information to many insurance companies. … ISO develops and publishes policy language that many insurance companies use as the basis for their products." ISO General Questions, Verisk, https://www.verisk.com/insurance/about/faq/ (last visited June 5, 2020); see also Insurance Services Office (ISO), Verisk, https://www.verisk.com/insurance/brands/iso/ (last visited June 5, 2020).

23. The language in the Policy is language that is "adhesionary" in that Plaintiff was not a participant in negotiating or drafting its content and provisions.

24. Plaintiff possessed no leverage or bargaining power to alter or negotiate the terms of the Policy, and more particularly, Plaintiff had no ability to alter, change or modify standardized language derived from the ISO format.

25. Plaintiff purchased the Policy with an expectation that it was purchasing a policy that would provide coverage in the event of business interruption and extended expenses, such as that suffered by Plaintiff as a result of Covid-19.

26. At no time did Defendant, or its agents, notify Plaintiff that the coverage that Plaintiff had purchased pursuant to an all-risk policy that included business interruption coverage, had exclusions and provisions that purportedly undermined the very purpose of the coverage, of providing benefits in the occurrence of business interruption and incurring extended expenses.

27. The COVID-19 pandemic caused direct physical loss of or damage to the Covered Properties under the Policy by denying use of and damaging the Covered Properties and by causing a necessary suspension of operations during the period of restoration. Further, the COVID-19 pandemic renders the Covered Properties unsafe, uninhabitable, or otherwise unfit for their intended use, which constitutes direct physical loss.

28. The purported exclusions of the Policy that Defendant has or is expected to raise in defense of Plaintiff's claim under the Civil Authority coverage of the Policy are contradictory to the provision of Civil Authority Order coverage and violates public policy of the State of New York as a contract of adhesion and hence not enforceable against Plaintiff.

29. As set forth herein, access to Plaintiff's business was prohibited by Civil Authority Orders and the Policy provides for coverage for actual loss of business sustained and actual

expenses incurred as a covered loss caused by the prohibitions of the Civil Authority Orders in the area of Plaintiff's Insured Properties.

30. In the Business Income (and Extra Expense) Coverage Form, Defendant agreed to pay for Plaintiff's actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct physical loss or damage. A "partial slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Defendant agreed to pay for loss of Business Income. (*See* Exhibit A at 27-28).

31. "Business Income" means net income (or loss) before income taxes that Plaintiff would have earned (or incurred) if no physical loss or damage had occurred as well as continuing normal operating expenses incurred, including pay-roll. (*See* Exhibit A at 27).

32. In the Business Income (and Extra Expense) Coverage Form, Defendant also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Property at the described premises. (*See* Exhibit A at 28).

33. "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property. (*See* Exhibit A at 29).

34. In the Business Income (and Extra Expense) Coverage Form, Defendant also agreed to "pay for the actual loss of Business Income" Plaintiff sustains "and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." (*See* Exhibit A at 29-30).

7

35. Losses caused by the COVID-19 pandemic and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, and Civil Authority provisions of the Policy.

36. The reasonable expectations of Plaintiff was that the business interruption coverage included coverage when a civil authority forced closure of the business for an issue of public safety within and in the immediate area surrounding the Insured Properties.

37. The Policy does not exclude the losses suffered by Plaintiff and therefore, the Policy does provide coverage for the losses incurred by Plaintiff.

38. Plaintiff suffered direct physical loss or damage within the definitions of the Policy as loss of use of property, as here, constitutes loss or damage.

39. The virus or bacteria exclusions do not apply because Plaintiff's losses were not directly caused by a virus, bacterium or other microorganism. Instead, Plaintiff's losses were caused by the entry of Civil Authority Order, particularly those by Governor Cuomo to mitigate the spread of COVID-19.

40. Plaintiff submitted a claim for loss covered by the above detailed policy provisions to Defendant on March 30, 2020 (Claim Number: 23798628) due to the COVID-19 pandemic and the related Civil Authority Orders.

41. On April 2, 2020 Defendant denied Plaintiff's claim. (*See* Claim Denial Letter attached hereto as Exhibit "B").

42. As Defendant's denial of Plaintiff's claim illustrates and based on information and belief, the Defendant has accepted the policy premiums with no intention of providing any coverage for business losses or the Civil Authority extension due to a loss and shutdown.

B. **The Coronavirus Pandemic**

43. The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage. It is clear that contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces of the restaurant.

44. The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last visited May 29, 2020).

45. The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

46. The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

47. China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

C. **Civil Authority**

48. On March 7, 2020, New York Governor Andrew Cuomo declared a Disaster Emergency for the entire state of New York as a result of COVID-19.

49. On March 12, 2020, Governor Cuomo set restrictions on large gatherings.

50. On March 20, 2020, the State of New York issued a stay-at-home order that all non-essential workers must stay at home as a result of the COVID-19 pandemic. To date, this order has been extended to at least May 15, 2020.

51. On April 17, 2020, the State of New York ordered all individuals over the age of two to wear a face covering when in a public place.

52. Further, on April 10, 2020 President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?
>
> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. ***But if I had it I'd expect to be paid***. You have people. ***I speak mostly to the restaurateurs***, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

10

https://youtu.be/_cMeG5C9TjU (last visited on May 29, 2020) (emphasis added).

53. The President is articulating a few core points:

   a. Business interruption is a common type of insurance, especially for restaurants.

   b. Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

   c. This pandemic should be covered unless there is a specific exclusion for pandemics.

   d. If insurers deny coverage, they would be acting in bad faith.

54. These Orders and proclamations, as they relate to the closure of all "non-life-sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiff's, as the requisite contact and interaction causes a heightened risk of the property becoming contaminated.

55. Plaintiff's business is unable to open its doors as a direct consequence of the Civil Authority stay-at-home orders for public safety issued by the Governor of New York and the State of New York generally. Accordingly, Plaintiff has submitted a claim to Defendant related to such losses.

**D.   Impact on Denny's**

56. As a result of the Orders referenced herein, Plaintiff ceased retail operations and closed its doors to customers beginning on March 16, 2020.

57. Due to Plaintiff's mandatory cessation of operations, Plaintiff was forced to lay off its entire staff, amounting to approximately one-hundred sixty (160) employees.

58. Plaintiff's business is not a closed environment, and because people – staff, customers, community members, and others – cycle in and out of the retail stores and offices,

there is an ever-present risk that the Insureds Properties are contaminated and would continue to be contaminated.

59. The virus is physically impacting Denny's. As a result of the aforementioned Orders, the Plaintiff is unable to allow any customers into its retail locations. As a retailer of children's clothing and accessories, Plaintiff's business, prior to the Pandemic, frequently served customers who would visit the store, touch and interact with multiple retail items during a visit, as well as use the fitting rooms to try on clothing. This makes Plaintiff's business highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the activities of the staff and customers require them to work and interact in close proximity to one another and because staff routinely assists customers in selecting clothing, as well as trying on clothing for fit.

60. The entry of the Civil Authority Orders to mitigate health risks to the public by attempting to prevent COVID-19 contamination, through the closing businesses and ordering persons to stay at home resulted in a physical impact on Plaintiff's business and Insured Properties.

61. Plaintiff had no choice but to comply with the Civil Authority Orders, for failure to do so would have exposed Plaintiff and his business to fines and sanctions. Plaintiff's compliance with mandates resulted in Plaintiff suffering business losses, business interruption and extended expenses of the nature that the Policy covers and for which Plaintiff's reasonable expectation was that coverage existed in exchange for the premiums paid.

62. Any effort by the Defendant to deny the reality that the Plaintiff has suffered physical loss and damage would constitute a false and potentially fraudulent misrepresentation done in bad faith that could endanger the Plaintiff and the public.

63. A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the business due to the shutdown caused by the civil authorities' response is necessary. As a result of these Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

## CAUSES OF ACTION

### COUNT I
### DECLARATORY RELIEF

64. Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

65. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

66. An actual controversy has arisen between Plaintiff and Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, Defendant disputes and denies, *inter alia,* that:

   a. The Orders constitute a prohibition of access to Plaintiff's Insured Properties;

   b. The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

   c. The Orders trigger coverage;

   d. The Policy provides coverage to Plaintiff for any current and future closures due to physical loss or damage directly or indirectly from the Coronavirus and/or pandemic circumstance under the Civil Authority coverage parameters;

  e. The Policy's exclusions for virus and bacteria do not apply to the circumstances presented in the lawsuit and the kind and types of damages and losses suffered by Plaintiff;

  f. Defendant's denial of coverage for losses sustained that were caused by the entry of the Civil Authority Orders referenced, and Plaintiff's adherence to the Civil Authority Orders violates public policy;

  g. The under the circumstances of this Pandemic and the entry of the Civil Authority Orders referenced, Plaintiff's had no choice but to comply with the Civil Authority Orders, and that Plaintiff's compliance resulting in Plaintiff suffering business losses, business interruption and extended expenses is therefore a covered expense;

  h. The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Properties; and

  i. Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

67. Plaintiff seeks a Declaratory Judgment to determine whether the Orders constitute a prohibition of access to Plaintiff's Insured Properties.

68. Plaintiff further seeks a Declaratory Judgment to affirm that the Orders trigger coverage.

69. Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future closures of businesses such as Plaintiff's due to physical loss or damage and the policy provides business income coverage in the event that a loss or damage at the Insured Properties has occurred.

70. Plaintiff does not seek any determination of whether the Coronavirus is physically in or at the Insured Properties, amount of damages, or any other remedy other than declaratory relief.

## COUNT II
## BREACH OF CONTRACT
*Business Income Coverage*

14

70.71.   Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

71.72.   The Policy is a valid and enforceable contract between Defendant and Plaintiff.

72.73.   Plaintiff's Policy is a contract under which Plaintiff paid premiums in exchange for Defendant's promise to pay Plaintiff for losses for claims covered by the Policy.

73.74.   In the Business Income (and Extra Expense) Coverage Form of the Policy, Defendant agreed to pay for Plaintiff's actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct physical loss or damage.

74.75.   A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Defendant agreed to pay for loss of Business Income during the "period of restoration."

75.76.   "Business Income" means net income (or loss) before income taxes that Plaintiff would have earned (or incurred) if no physical loss or damage had occurred as well as continuing normal operating expenses incurred, including pay-roll.

76.77.   The COVID-19 pandemic—which rendered the Covered Property unsafe, uninhabitable, or otherwise unfit for its intended use—caused direct physical loss and damage to Plaintiff requiring the suspension of operations at the Covered Property. Losses caused by the COVID-19 pandemic thus triggered the Business Income provision of Plaintiff's Policy.

77.78.   Plaintiff has complied with all applicable provisions of its policies and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant materially breached its insurance coverage obligations pursuant to the Policy.

~~78.~~ 79.  By denying coverage for any Business Income losses incurred by Plaintiff in connection with the COVID-19 pandemic, Defendant has materially breached its coverage obligations under the Policy.

~~79.~~ 80.  As a direct and proximate result of Defendant's breach of the Policy, Plaintiff sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## COUNT III
## BREACH OF CONTRACT
### Extra Expense Coverage

~~80.~~ 81.  Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

~~81.~~ 82.  The Policy is a valid and enforceable contract between Defendant and Plaintiff.

~~82.~~ 83.  Plaintiff's Policy is a contract under which Plaintiff paid premiums in exchange for Defendant's promise to pay Plaintiff for losses for claims covered by the Policy.

~~83.~~ 84.  In the Business Income (and Extra Expense) Coverage Form, Defendant agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Property at the described premises.

~~84.~~ 85.  "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

~~85.~~ 86.  The COVID-19 pandemic—which rendered the Covered Property unsafe, uninhabitable, or otherwise unfit for its intended use—caused direct physical loss and damage to Plaintiff requiring the suspension of operations at the Covered Property. Losses caused by the COVID-19 pandemic thus triggered the Extra Expense provision of Plaintiff's Policy.

16

86.87.  Due to the COVID-19 pandemic and Civil Authority Orders, Plaintiff incurred Extra Expense at the Covered Property, including but not limited to increased cleaning and sanitation expenses.

87.88.  Plaintiff has complied with all applicable provisions of its policies and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant materially breached its insurance coverage obligations pursuant to the Policy.

88.89.  By denying coverage for any Extra Expense incurred by Plaintiff in connection with the COVID-19 pandemic, Defendant has materially breached its coverage obligations under the Policy.

89.90.  As a direct and proximate result of Defendant's breach of the Policy, Plaintiff sustained substantial damages for which Defendant is liable, in an amount to be established at trial, which includes but is not limited to increased cleaning and sanitation expenses.

## COUNT IV
## BREACH OF CONTRACT
### Civil Authority Coverage

90.91.  Plaintiff re-alleges and incorporates by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

91.92.  The Policy is a valid and enforceable contract between Defendant and Plaintiff.

92.93.  Plaintiff's Policy is a contract under which Plaintiff paid premiums in exchange for Defendant's promise to pay Plaintiff for losses for claims covered by the Policy.

93.94.  In the Business Income (and Extra Expense) Coverage Form, Defendant also agreed to "pay for the actual loss of Business Income" Plaintiff sustains "and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due

to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss."

94.95.   The Civil Authority Orders issued in response to the COVID-19 pandemic triggered the Civil Authority provision of Plaintiff's Policy.

95.96.   The Civil Authority Orders were a result of the COVID-19 pandemic, which is a dangerous physical condition resulting from a Covered Cause of Loss.

96.97.   The Civil Authority Orders prohibited access to the Covered Property.

97.98.   Plaintiff has complied with all applicable provisions of its policies and/or those provisions have been waived by Defendant or Defendant is estopped from asserting them, and yet Defendant materially breached its insurance coverage obligations pursuant to the Policy.

98.99.   By denying coverage for any Business Income losses incurred by Plaintiff in connection with the Civil Authority Orders and the COVID-19 pandemic, Defendant has materially breached its coverage obligations under the Policy.

99.100.  As a direct and proximate result of Defendant's breach of the Policy, Plaintiff sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff herein prays as follows:

    a.    For a declaration that the Orders constitute a prohibition of access to Plaintiff's Insured Properties.

    b.    For a declaration that the prohibition of access by the Orders is specifically prohibited access as defined in the Policy.

    c.    For a declaration that the Orders trigger coverage under the Policy.

    d.    For a declaration that the Policy provides coverage to Plaintiff for any current and future closures due to physical loss or damage directly or

      indirectly from the Coronavirus and/or pandemic circumstance under the Civil Authority coverage parameters.

e. For a declaration that the Policy's exclusions for virus and bacteria do not apply to the circumstances presented in the lawsuit and the kind and types of damages and losses suffered by Plaintiff.

f. For a declaration that Defendant's denial of coverage for losses sustained that were caused by the entry of the Civil Authority Orders referenced, and Plaintiff's adherence to the Civil Authority Orders violates public policy.

g. For a declaration that under the circumstances of this Pandemic and the entry of the Civil Authority Orders referenced, Plaintiff had no choice but to comply with the Civil Authority Orders, and that Plaintiff's compliance resulting in Plaintiff suffering business losses, .business interruption and extended expenses is therefore a covered expense.

h. For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued closures due to physical loss or damage directly or indirectly from the Coronavirus.

i. For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Insured Properties or the immediate area of the Plaintiff's Insured Properties.

j. For a judgment on Counts II-IV in favor of Plaintiff, and awarding damages for breach of contract in an amount to be determined at trial;

k. For an order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

l. For an order requiring Defendant to pay attorneys' fees and costs of suit; and

m. For such other relief as the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Plaintiff hereby demands trial by jury.

Dated: July __, 2020        Respectfully submitted,

      */s/ Daniel P. Buttafuoco*
      Daniel P. Buttafuoco, Esq.
      **Daniel P. Buttafuoco & Associates, PLLC**
      144 Woodbury Rd

Case 2:20-cv-03121-GRB-SIL   Document 1   Filed 07/14/20   Page 20 of 20 PageID #: 20

Woodbury, New York 11797
Telephone: (516) 746-8100
DButtafuoco@ButtafuocoLaw.com

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Arnold Levin, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN, L.L.P.**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
dee.miles@beasleyallen.com
rachel.boyd@beasleyallen.com
paul.evans@beasleyallen.com

*Counsel for Plaintiff*